IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 15-cv-01748-PAB

DIRK BROWN,

      Applicant,

v.

JASON LENGERICH, BVCC Warden, and
CYNTHIA COFFMAN, Attorney General of the State of Colorado,

      Respondents.

_____

## ORDER  DENYING WRIT OF HABEAS CORPUS
_____

      Applicant, Dirk Brown, a state prisoner in the custody of the Colorado

Department of Corrections, is currently incarcerated at the Buena Vista Correctional

Complex-Main & Boot Camp (BVCC) of the Colorado State Penitentiary in Buena Vista,

Colorado.  He is serving sentences for judgments of conviction imposed by the

Arapahoe County District Court in Case No. 10CR131.

      On August 13, 2015, Applicant filed a pro se application for habeas corpus relief

under 28 U.S.C. § 2254 raising the following claims:

      1.     "Sheridan Police Dept. (SPD) Det. Kristine Denise Bryant's Vigilante
           Method Used To Wrongfully Convict Petitioner."

      2.     "Colo. Bureau Of Investigation (CBI) Agent's Destruction Of Evid.,
           Negligent Testing Methods & Suppression Thereof."

      3.     "Defective Warrant (Lack of Court Subject Matter Jurisdiction)."

Docket No. 1.

Respondents have filed a Pre-Answer Response [Docket No. 9] and an Answer

on the Merits [Docket No. 27]. Applicant has not filed any replies.

The Court must construe the Application liberally because Applicant is not

represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall

v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court does not

"assume the role of advocate for the *pro se* litigant." *See Hall*, 935 F.2d at 1110. For

the reasons stated below, the Court finds that Mr. Brown is not entitled to habeas relief.

## I. RELEVANT FACTUAL AND PROCEDURAL HISTORY

On direct appeal of Applicant's conviction, the Colorado Court of Appeals

described the relevant factual background as follows:

> A jury convicted defendant, Dirkin Brown, of second degree
> kidnapping, three counts of aggravated robbery, conspiracy to commit
> aggravated robbery, and theft for robbing a pawn shop. The court also
> convicted Brown of being a habitual criminal and sentenced him to 256 years
> in the Department of Corrections. Brown appeals his convictions and
> sentence. We affirm and remand for correction of the mittimus.

> At trial, the main question the jury had to decide was whether smears
> of Brown's blood found at the pawn shop proved that Brown was one of the
> two robbers. The jury heard the following facts surrounding how the blood
> was found.

> One morning, when the pawn shop opened, two robbers walked in.
> They were both wearing disguises and carrying guns. One robber walked up
> to two employees and a customer, put his gun on the counter, and said,
> "[y]ou're being robbed." He took their personal possessions and held them
> at gunpoint. He also counted time out loud.

> The other robber went to the glass display case that contained the
> high-end jewelry. He smashed the case with a crow bar and shoved more
> than $27,000 worth of jewelry into a duffel bag. Then, he took a detergent
> bottle out of the duffel bag, poured detergent on the case, and dropped the
> bottle on the floor.

The robbers then fled, less than three minutes after entering the shop.

Because the two employees had managed to press panic buttons during the robbery, police arrived minutes later.

The employees and customer all generally described the robbers as black men who were approximately six feet tall, but could not describe any other identifying characteristics because of the disguises.

One of the first police detectives on the scene also saw the detergent bottle and noticed that there were bright red smears on the handle that looked like fresh blood.

When a crime lab employee arrived more than an hour later, he photographed the bottle.  By then, the smears were dry.  (The crime lab employee did not find any other blood at the scene.)

The crime lab tested the smears.  Two of them tested positive for blood, but a third smear did not test positive for blood.

DNA testing on the blood revealed a presumptive DNA match to Brown, and that match was confirmed by getting a DNA sample from Brown.

At trial, the DNA from the smears was the only evidence directly linking Brown to the robbery.  (No fingerprints or other DNA was recovered that identified any other suspects matching the description of the robbers.)

Brown's theory of the case was that the blood was not fresh and thus did not prove that he was one of the robbers; rather, he argued that he had washed his clothes at a public laundromat several months prior to the robbery and that the robbers could have taken the bottle from the laundromat.

On appeal, Brown contends that (1) the charges should be dismissed because the detective's testimony that the blood appeared fresh is insufficient to support the conviction because it is incredible as a matter of law, and (2) the trial court abused its discretion by denying the Brown's pro se motion for a new trial.

Brown also requests that a reference to sexual assault on the mittimus be stricken.

Docket No. 9-2, pp. 2-4.

Applicant filed a direct appeal.  Docket No. 9-3 (opening brief).  On June 4, 2014, the Colorado Court of Appeals affirmed.  Docket No. 9-2 (*People v. Brown*, No. 12CA0181 (Colo. Ct. App. June 4, 2014) (not published)).  On January 12, 2015, the Colorado Supreme Court denied *certiorari* review.  Docket No. 9-6.

## II. STANDARD OF REVIEW

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a superstate appellate court.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  "When a federal district court reviews a state prisoner's habeas [application] pursuant to 28 U.S.C. § 2254 it must decide whether the [applicant] is 'in custody in violation of the Constitution or laws or treaties of the United States.'  The court does not review a judgment, but the lawfulness of the [applicant's] custody simpliciter."  *Coleman v. Thompson*, 501 U.S. 722, 730 (1991).  *See also Davis v. Ayala,* --- U.S. ----, 135 S. Ct. 2187, 2202 (2015) ("The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply de novo review of factual findings and to substitute its own opinions for the determination made on the scene by the trial judge.") (internal quotations and citations omitted).

Specifically, the Habeas Corpus Statute, 28 U.S.C. § 2254(d), provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Mr. Brown bears the burden of proof under § 2254(d).  *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (*per curiam*).

The Court reviews claims of legal error and mixed questions of law and fact

pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir.

2003).  The threshold question the Court must answer under § 2254(d)(1) is whether

Mr. Brown seeks to apply a rule of law that was clearly established by the Supreme

Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362,

390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the

*dicta*, of [the Supreme] Court's decisions as of the time of the relevant state-court

decision."  *Id*. at 412.  Furthermore,

clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  A legal principle is "clearly

established" within the meaning of this provision only when it is embodied in a holding

of the Supreme Court.  *Thaler v. Haynes*, 559 U.S. 43, 47 (2010).   If the circumstances

of a case are only similar to Supreme Court precedents, then the state court's decision

is not "contrary to" the holdings in those cases.  *Woods v. Donald,* --- U.S. ----, 135 S.

Ct. 1372, 1377 (2015) ("Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court.") (quotations omitted). If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See Waddington v. Sarausad*, 555 U.S. 179, 191 (2009).[1]

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the

---

[1] *See also Donald*, 135 S. Ct. at 1378 ("All that matters here, and all that should have mattered to the Sixth Circuit, is that we have not held that *Cronic* applies to the circumstances presented in this case. For that reason, federal habeas relief based upon *Cronic* is unavailable.")

relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be unreasonable." *Id*. at 411.  "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.  Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 562 U.S. at 101 (internal quotation marks omitted).  In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*.  Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

7

This deference was explained in *Renico v. Lett*, 599 U.S. 766 (2010), where the Supreme Court reviewed the Court of Appeals for the Sixth Circuit's grant of a writ of habeas corpus to a defendant who was retried for murder following the trial judge's grant of a mistrial after the jury had deliberated for at least four hours following a relatively short, and far from complex, trial.  The Michigan Supreme Court had concluded there was no violation of the Double Jeopardy Clause because the trial court exercised its sound discretion.  The federal district court granted a writ of habeas corpus and the Sixth Circuit affirmed, both concluding that the trial court's declaration of a mistrial constituted an abuse of discretion because there was no manifest necessity. The Supreme Court reversed.

> It is important at the outset to define the question before us.  That question is not whether the trial judge should have declared a mistrial.  It is not even whether it was an abuse of discretion for her to have done so – the applicable standard on direct review.  The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law."  § 2254(d)(1).

*Lett*, 559 U.S. at 772-73.  The Supreme Court further instructed:

> It is not necessary for us to decide whether the Michigan Supreme Court's decision-or, for that matter, the trial judge's declaration of a mistrial – was right or wrong.  The latter question, in particular, is a close one.  As Lett points out, at a hearing before the Michigan Court of Appeals, the state prosecutor expressed the view that the judge had in fact erred in dismissing the jury and declaring a mistrial.  The Michigan Supreme Court declined to accept this confession of error, and in any event – for the reasons we have explained – **whether the trial judge was right or wrong is not the pertinent question under AEDPA**.

*Id*. at 778, n. 3 (emphasis added) (internal citation omitted).  *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is

"not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1398 (2011) ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court.").

In making this determination, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence.  28 U.S.C. § 2254(e).  Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it."  *Campbell v. Vaughn*, 209 F.3d 280, 289 (3d Cir. 2000).  In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Marshall v. Lonberger*, 459 U.S. 422, 433 (1982).  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

For federal habeas claims not adjudicated on the merits in state-court proceedings, the Court must exercise its independent judgment.  *McCracken v. Gibson*, 268 F.3d 970, 975 (10th Cir. 2001).  Any state-court findings of fact that bear upon the

claim are entitled to a presumption of correctness rebuttable only by clear and convincing evidence. *Hooks v. Ward*, 184 F.3d 1206, 1223 (10th Cir. 1999) (applying § 2254(e)(1)'s presumption of correctness to state-court factual findings bearing upon the claim, even though the claim was not adjudicated on the merits by the state court).

The Court will apply the foregoing standards in reviewing Applicant's claims.

### A.   Claim No. 1:  Sufficiency of the Evidence

In his first claim, Applicant essentially asserts a claim of insufficient evidence to support his conviction.  A failure to prove the essential elements of a crime beyond a reasonable doubt renders a conviction for that crime a violation of the Due Process Clause of the Fourteenth Amendment.  *See Fiore v. White,* 531 U.S. 225, 228-29 (2001).  The proper standard for sufficiency of the evidence is set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979).  In *Jackson*, the Supreme Court held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319.  "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Id.* "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial," and it requires only that they draw "'reasonable inferences from basic facts to ultimate facts.'"  *Coleman v. Johnson*, --- U.S. ----, 132 S. Ct. 2060, 2064 (2012) (*per curiam*).

Federal courts must look to state law for the substantive elements of the criminal offense. *Jackson* at 324 n.16.  To the extent an insufficient evidence claim involves an interpretation of state law, the state court's interpretation "binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (*per curiam*).  *See also Schad v. Arizona*, 501 U.S. 624, 636 (1991) (federal courts are not free to substitute their own interpretations of state statutes for those of a state's courts); *Mulanney v. Wilber*, 421 U.S. 684 (1975) (exceptional circumstances being absent, United States Supreme Court accepted, as binding, the Maine Supreme Judicial Court's construction of its state homicide law).  Moreover, when a state appellate court thoroughly reviews the sufficiency of evidence, that court's determination is entitled to great weight. *Parke v. Raley*, 506 U.S. 20, 36 (1993).

"Sufficiency of the evidence is a mixed question of law and fact." *Maynard v. Boone*, 468 F.3d 665, 673 (10th Cir. 2006).  Because this Court reviews the state court's sufficiency of the evidence decision under the highly deferential standard of the AEDPA, the Court must determine whether the Colorado courts' decisions upholding his convictions were based on an unreasonable determination of the facts in light of the evidence presented and whether the Courts reasonably decided that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319.  This doubly deferential standard limits the federal habeas court's inquiry to whether the state court's rejection of a sufficiency of the evidence challenge was an objectively unreasonable application of *Jackson*.  *See Johnson*, 132 S. Ct. at 2062.

In its review of Applicant's first claim, the Colorado Court of Appeals noted the evidence cited earlier in this order.  It also noted:

### I. Sufficiency of the Blood Smear Evidence

We first consider whether the charges should be dismissed because the detective's testimony that the blood appeared fresh is insufficient to support the conviction because it is incredible as a matter of law.  We conclude the detective's testimony is not incredible as a matter of law and evidence is sufficient to support the conviction.

We review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain the defendant's conviction.  We employ a substantial evidence test to determine if the evidence presented to the jury is sufficient to sustain a defendant's conviction.  Our substantial evidence test considers whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.

During our analysis, (1) we give the prosecution the benefit of every reasonable inference which can be drawn from the evidence; (2) where reasonable minds could differ, the evidence is sufficient to sustain a conviction; and (3) we generally do not assess the credibility of witnesses or resolve inconsistencies or contradictions in testimony.  Because it is the jury's function to assess the credibility of witnesses, we will only conclude that a witness's testimony is incredible as a matter of law when a witness testifies to events that he or she could not possibly have seen or are not possible under the laws of nature.

Brown contends that the detective's testimony is incredible for three reasons.  We list these reasons, and why we disagree, below.

First, Brown contends that the detective's testimony that the blood was a "few hours old" is incredible because the "laws of nature dictate" that blood does not look fresh after a few hours.  We disagree because the detective's testimony about the blood being a few hours old was merely a response to the following question:  "In your opinion, did blood on the bottle appear to be a few hours old or a few days old?"  *See Ramirez*, 30 P.3d at 809 ("[T]estimony that is merely . . . inconsistent[] or conflicting is not incredible as a matter of law.").

Second, Brown contends that the detective's testimony that she picked up the bottle by the cap, after it was photographed on the floor without the cap on, is incredible. We disagree because neither the prosecution nor defense counsel asked the detective if or when she put the cap back on the bottle. Her testimony is not incredible simply because she was never asked a specific question about the cap.

Third, Brown contends that the detective's testimony that she saw the blood smears is incredible because she was in the pawn shop for only three minutes. We disagree because the detective testified that she looked at the bottle "really close[ly]" when she first arrived. She specifically described the blood as "bright red," "fresh," and "damp" but drying. She also testified that she knew how to tell the difference between fresh blood and dried blood. The fact that she might have made her observations within a few minutes does not make her testimony incredible.

We also conclude that the evidence was sufficient to support Brown's conviction because a jury could reasonably conclude that Brown cut himself on the broken glass during the robbery and left blood on the bottle.

Docket No. 9-2, pp. 2-8 (some internal quotations and citations omitted).

In reaching its determination of Applicant's first claim, the Colorado Court of Appeals applied the clearly established Supreme Court standard set forth in *Jackson*. Moreover, its conclusion that the evidence was sufficient is not an unreasonable application of the *Jackson* precedent; nor is it unreasonable in light of the facts presented. A review of the trial transcript supports the Court's conclusion that the evidence supported the jury's conclusion that Applicant's blood was deposited on the detergent bottle at the time of the robbery. Applicant's claim merely goes to Detective Bryant's credibility, which was the sole province of the jury to decide. "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).

13

Applicant further appears to assert that Detective Bryant provided perjured testimony during his criminal trial.  However, the mere introduction of perjured testimony, alone and without more, does not violate the constitutional rights of the accused.  In order to establish a due process violation, an applicant must show that:  1) the witness' testimony was in fact false; 2) the prosecution knew it to be false; and 3) the testimony was material.  *Napue v. People of State of Ill.*, 360 U.S. 264, 269 (1959).  *See also United States v. Caballero*, 277 F.3d 1235, 1243-44 (10th Cir. 2002).

Applicant offers no evidence that Detective Bryant's testimony was false.  As explained by the Court, her remarks about the age of the blood stain and picking up the bottle are not inconsistent with, let alone contradict, her testimony on direct examination.  Inconsistent testimony alone does not establish the knowing use of perjured testimony.  *See Tapia v. Tansy*, 926 F.2d 1554, 1563 (10th Cir. 1991).  Moreover, Applicant fails to show the prosecutor knew, or should have known, that Detective Bryant's testimony allegedly was false.  Thus, he has failed to show a violation of his due process rights based on his allegation of perjured testimony.  Therefore, Applicant is not entitled to habeas relief on this claim.

**B.  Claim 2:  Suppression of Evidence**

In his second claim, Applicant appears to assert that the Colorado Bureau of Investigation ("CBI") intentionally destroyed evidence.  Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness.  *California v. Trombetta*, 467 U.S. 479, 485 (1984).  This standard of fairness requires that criminal defendants be afforded a meaningful

opportunity to present a complete defense. *Id*. With respect to the preservation and destruction of evidence, states are required to preserve evidence that might be expected to play a significant role in the suspect's defense. *Id*. at 488. "To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id*. at 489 (internal citation omitted).

Moreover, a defendant can establish a due process violation only if he can show that: 1) the government failed to preserve evidence that was "potentially useful" to the defense; and 2) the government acted in bad faith in failing to preserve the evidence. *Arizona v. Youngblood*, 488 U.S. 51 (1988). The inquiry into bad faith "must necessarily turn on the police's knowledge of the exculpatory value of the evidence." *Id*. at 58. However, the "mere fact that the government controlled the evidence and failed to preserve it is by itself insufficient to establish bad faith." *Riggs v. Williams*, 87 F. App'x 103, 106 (10th Cir. 2004) (citing *Youngblood*). "This is true even if the government acted negligently . . . or even intentionally, so long as it did not act in bad faith." *Id*.

In its review of this claim, the CCA held as follows:

II. Motion for a New Trial

We next consider whether the trial court abused its discretion by denying Brown's pro se motion for a new trial. We conclude it did not.

Trial courts have discretion to rule on new trial motions based on the pleadings alone, without hearing oral argument. And, we will not disturb the court's ruling absent an abuse of discretion.

15

After his trial, but before sentencing, Brown told the court that his attorney refused to file several motions, including one about the destruction of evidence.  The basis for this motion was that exculpatory evidence, someone else's DNA, might have been destroyed when the third smear was consumptively used for blood DNA testing and that any other DNA on the bottle was destroyed when the lab employees dusted it for fingerprints.  Brown alleged that refusing to file this motion amounted to ineffective assistance of counsel.

The trial court appointed alternate counsel for the limited purpose of reviewing Brown's motions and assessing the merits of his claims.

The alternate counsel concluded that the motions had no merit and that Brown's trial counsel was not ineffective.  Yet, Brown persisted in trying to explain his destruction of evidence motion to the court:  "[I]t was three red spots on this detergent bottle.  One spot was destroyed, but it was DNA evidence so I'm saying that was exculpatory.  And then the rest of the evidence was used all up which defense couldn't get an independent testing on it done."

When the trial court explained to Brown that he could not force counsel to file the motion, Brown insisted that he be allowed to file the motion and asked to proceed pro se. The trial court then allowed Brown to proceed pro se to file his motions, but was clear that it was "absolutely not finding a conflict" with counsel.

The trial court explained to Brown how the motions hearing would proceed:  "What's going to happen . . . is the Court will go through the motions.  If there is need for additional argument, the Court will hear that; otherwise, the Court will rule on those motions."

At the motions hearing, the trial court considered the motion and, without hearing arguments from Brown or the prosecution, ruled as follows:

The first [motion] . . . mentions destruction of evidence in the first paragraph. . . . [This] [d]estruction of evidence motion doesn't really give much basis to understand what is newly discovered or possibly destroyed evidence that's referred to in that based – it talks about the crime lab technician destroying exculpatory evidence but doesn't specifically state what that is and the Court does not find that's a basis for a motion for a new trial.  There is no claim upon which relief can be granted here.

> We do have from what the defense had filed . . . a motion to preserve evidence and specifically listing the detergent bottle which is really at issue here and mentioned several times over the Sunburst detergent bottle and just factually that was found at the crime scene.  It appeared to have blood stains on it.  That was taken to the crime lab at the Colorado Bureau of Investigation.  That was tested.  DNA resulted and it did result in a CODIS hit to Mr. Brown and that's how this case was tied together to Mr. Brown.
>
> So there was blood removed in order to do the testing but the bottle itself was preserved.  It was introduced in evidence.  There was a motion by the defense to preserve that and some other evidence which the Court granted so there is no destruction of evidence.  There is use of evidence by the CBI and they of course have retained their test results.  So the Court does not find that there is any basis in which to grant new trial that there was anything untoward done by either the District Attorney's Office or the Colorado Bureau of Investigation such as that the Court should have ordered a new trial.  So that initial motion . . . about this so-called destruction of evidence that is denied.
>
> We conclude the trial court did not abuse its discretion because it fully considered Brown's motion, and properly denied it.  Consumptive use of the third smear during DNA testing was proper and dusting the bottle for fingerprints did not destroy any evidence with apparent exculpatory value.  Yet, Brown contends that he "was denied his right to present alternate suspect evidence by the limited DNA analysis and the State's destruction of evidence" and "by failing to permit [Brown] to explain his motion the judge failed to understand his argument."  We disagree because the court was familiar with Brown's argument, considered both the use of the third smear for DNA testing and the use of the bottle for fingerprints, and had two different attorneys review Brown's allegations.

Docket No. 9-2, pp. 8-12.

Applicant's claim is based on mere conjecture.  The evidence of the bottle and

blood stains did not have an exculpatory value that was apparent at the time and

Applicant has not shown that the failure to do additional testing was the result of bad

faith.  *Cf. Youngblood*, 488 U.S. at 59 ("the police do not have a constitutional duty to

17

perform any particular tests.")  Therefore, this Court finds that the state court's determination of Applicant's second claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in an unreasonable determination of the facts presented in the state court proceeding.  Thus, there is no basis upon which to grant the Application with regard to this claim.

### C.  Claim 3:  Illegal Arrest

Finally, in Claim 3 Applicant asserts that the warrant for his arrest failed the Constitution's particularity requirement because it identified him as being six foot four inches and weighing 465 pounds.  He claims that his rights under the Fourth Amendment were violated because he is six feet and 160 pounds.

The Fourth Amendment protects against unreasonable search and seizure and is generally enforced through the exclusionary rule.  *See, e.g., Illinois v. Gates*, 462 U.S. 213, 254 (1983); *Stone v. Powell*, 428 U.S. 465, 482-87 (1976).  In *Stone*, the Supreme Court limited federal habeas review for alleged Fourth Amendment violations based on the Court's determination that any additional contribution gained from consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to the associated costs.  428 U.S. at 493-94.  The Supreme Court further held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Id.* at 494.

The Supreme Court has not defined precisely the phrase "opportunity for full and

fair litigation." *See Gamble v. State of Oklahoma*, 583 F.2d 1161, 1164 (10th Cir.

1978).  In *Gamble*, the Tenth Circuit provided the following guidance:

> "Opportunity for full and fair consideration" includes, but is not limited to,
> the procedural opportunity to raise or otherwise present a Fourth
> Amendment claim.  It also includes the full and fair evidentiary hearing
> contemplated by *Townsend* [*v. Sain*, 372 U.S. 293 (1963)].  Furthermore,
> it contemplates recognition and at least colorable application of the correct
> Fourth Amendment constitutional standards.

*Id.* at 1165.  "Thus, a federal court is not precluded from considering Fourth

Amendment claims in habeas corpus proceedings where the state court willfully refuses

to apply the correct and controlling constitutional standards."  *Id.*

In the instant action, Applicant filed a motion in state court arguing that his

detention was illegal based on a violation of his Fourth Amendment rights with respect

to the "defective" arrest warrant.  See Docket No. 27-3.  The trial court ruled on his

motion as follows:

> The next one is a motion for new trial.  Again it is the same title but
> this one talked about the warrant and argues that the warrant was
> improper because it listed in some paperwork that the person of Mr.
> Brown weighed 465 pounds, 6 foot 4 so on and so forth. That's not really
> an issue for a new trial before the Court.
>
> When we are talking about an arrest warrant, the Court issued a
> warrant for a person by the name of Dirkin Brown based upon the
> complaint and information and the affidavit attached thereto on January
> 20.  Finding that probable cause had been established to arrest a person
> by the name of Dirkin Brown.  Once that information goes over, then it is
> up to the police department to put the information sheet together so that
> they are arresting the correct person.
>
> The Court does not have any evidence before it that they arrested
> anyone but the correct person.  The only indication of this substantial
> weight 465 found [sic] is on one piece of paper that the Court could find

and it isn't even part of the court's file.  The Court never sees the
information law enforcement uses in which to arrest somebody.

The Court is satisfied that it issued a warrant and that that warrant
was in the system and the police acted lawfully and picked someone up
by the name of Dirkin Brown and brought that person in, there is no basis
for a new trial for that.  That there was some typographical error by law
enforcement does not rise to the level of any constitutional issue or any
record for trial itself that would require the Court to grant a new trial in its
discretion or mandatorily.  So that motion in regards to the warrant motion
for new trial is denied.

Docket No. 27-5, at 9-10 (Tr. 6/23/11, pp. 9-10).

The Court finds that the state court proceedings sufficed to provide Applicant

with an opportunity for full and fair litigation of his claim.  *See Smallwood v. Gibson*, 191

F.3d 1257, 1265 (10th Cir. 1999).  Moreover, the Court finds that the state court

recognized and applied correct constitutional standards in resolving Applicant's claim.

Thus, the Court finds that Applicant was afforded a "procedural opportunity to raise or

otherwise present" his Fourth Amendment claim in the state trial and appellate courts,

and that the state courts recognized and applied correct Fourth Amendment standards.

*See Gamble*, 583 F.2d at 1165.  *Accord Cannon v. Gibson*, 259 F.3d 1253, 1263 (10th

Cir.  2001) (illegal-arrest claim barred by *Stone*); *Ezell v. Mullin*, 201 F. App'x 599, 602

(10th Cir. 2006) (same).

Applicant's disagreement with the result of his hearing does not demonstrate that

the state court failed to recognize, or wilfully ignored, controlling legal standards.  Thus,

the Court finds that Applicant is not entitled to federal habeas relief for his Fourth

Amendment claim.  Accordingly, Claim 3 provides no basis for federal habeas corpus

relief.

20

## III. CONCLUSION

Adjudication of Applicant's first and second claims by the Colorado state courts did not result in a conclusion opposite to that reach by the Supreme Court on a question of law, unreasonably apply a governing legal principle to the facts of Applicant's case, or result in an unreasonable determination of facts in light of the evidence presented.  Moreover, Applicant's third claim is not cognizable in this habeas corpus application.  Therefore, Applicant's request for federal habeas relief will be denied.  Accordingly, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket No. 1] filed by Applicant, Dirk Brown, is **DENIED**.  It is further

**ORDERED** that no certificate of appealability will issue because Applicant has not made a substantial showing of the denial of a constitutional right.  It is further

**ORDERED** that this case is dismissed with prejudice.

DATED January 22, 2016.

BY THE COURT:


s/Philip A. Brimmer
Philip A. Brimmer
United States District Judge